**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

JAMAANE NELSON and GRACE NELSON,        :    **INDEX NO. 12CV7618(RJS)**
:    **ECF CASE**
:

               Plaintiffs,    :

:    **JURY TRIAL DEMANDED**
      - against -    :
:
:

THE CITY OF NEW YORK, a municipal entity, and    :    **COMPLAINT**
NEW YORK CITY POLICE OFFICERS: POLICE    :
OFFICER ROBERT RODA, POLICE OFFICER    :
KEVIN HOUST, and POLICE OFFICER "JOHN DOE    :
1-3"    :
:
:
:

             Defendants.    :
:
:
:
------------------------------------------------------------------------X

      Plaintiff JAMAANE NELSON, and Plaintiff GRACE NELSON by their attorneys, STECKLOW COHEN & THOMPSON, complaining of the defendants, respectfully allege as follows:

## I. PRELMINARY STATEMENT

    **1.**    Plaintiff JAMAANE NELSON, and Plaintiff GRACE NELSON bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

    **2.**    At or around 4:00pm on November 30, 2011 Plaintiff JAMAANE NELSON was driving toward a friend and co-worker's ("Friend") house ("the home") in the Bronx, New York so that he and said friend could hang out for a few minutes before carpooling into work at a local movie theater. Just before Plaintiff JAMAANE NELSON arrived at the home, he spotted a blue Crown Victoria car ("the car") occupied by three males ("stranger(s)") whom he did not know. One of the strangers beckoned Plaintiff JAMAANE NELSON over to the vehicle. With reasonable prudence and in fear for his safety, Plaintiff JAMAANE NELSON did not go over to the car and talk to individuals whom he did not know, but instead, continued walking toward the home. Shortly after

Plaintiff JAMAANE NELSON entered the home, two of the aforementioned strangers broke down the front door of the home and announced themselves as police officers. In the following moments, Defendant POLICE OFFICER RODA pepper sprayed, kicked, cursed at, and struck Plaintiff JAMAANE NELSON with a collapsible metal baton before taking him into the 47th Precinct without telling him why he had been stopped or informing him as to what crime or violation he had been charged with.  Plaintiff JAMAANE NELSON was released without charge from Bronx Central Booking the following evening.

3.    When Plaintiff JAMAANE NELSON's mother, Plaintiff GRACE NELSON, arrived at the 47th Precinct to check on her son, the Defendant POLICE OFFICERS present refused to give her any information regarding her son, cursed and yelled at her, shoved her down the front steps of the 47th Precinct and subsequently handcuffed and arrested her. Thereafter, the Defendant POLICE OFFICERS arranged for an ambulance to take Plaintiff GRACE NELSON to the hospital, and subsequently kept her in handcuffs en route and at the hospital, only removing the handcuffs shortly before the arrival of several Internal Affairs investigators. Neither Plaintiff was ever charged with any crime or violation.  In sum, Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON bring suit in a quest for answers as to why they were successively punitively arrested, brutally beaten, detained at length, and tendered for prosecution in the absence of probable cause to arrest and in the absence of any criminal or illegal conduct of any type or sort.

4.    In compliance with the Southern District's "PLAN FOR CERTAIN § 1983 CASES AGAINST THE CITY OF NEW YORK," attached hereto as **Exhibit "A"** are executed §160.50 releases for the Plaintiffs, and an executed medical records release for Plaintiff Grace Nelson.

5.    Both Plaintiffs timely filed notices of claim and have complied with all relevant sections of GML 50.

## II. JURISDICTION

6.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

7.    Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

8.    Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district and the incident occurred in the same district.

## IV. JURY DEMAND

**9.** Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

**10.** Plaintiff JAMAANE NELSON is an American citizen and is currently a resident of the Bronx, New York.

**11.** Plaintiff GRACE NELSON is an American citizen and is currently a resident of the Bronx, New York.

**12.** Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

**13.** Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, CITY OF NEW YORK.

**14.** Defendant POLICE OFFICER ROBERT RODA, ("Defendant POLICE OFFICER RODA"), at all times here relevant was a member of the New York City Police Department.

**15.** Defendant POLICE OFFICER KEVIN HOUST, ("Defendant POLICE OFFICER HOUST"), at all times here relevant was a member of the New York City Police Department.

**16.** Defendant "John Doe I" at all times here relevant was a member of the New York City Police Department.

**17.** Defendant "John Doe II" at all times here relevant was a member of the New York City Police Department.

**18.** Defendant "Jane Doe" at all times here relevant was a member of the New York City Police Department.

**19.** The physical identities, *sui generis*, of some of the Defendant "John Doe ___" POLICE OFFICERS at issue here are known to Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON at this time.

**20.** Defendant "John Doe I" POLICE OFFICER is a male who appeared to be both African-American and Caucasian, stood about 6'2" tall, had tattoos on his forearms, was of medium build, was wearing his hair in a ponytail, and was wearing glasses and a hooded sweater with sleeves rolled up at the time of the incident and arrest in question.

**21.**    Defendant "John Doe II" POLICE OFFICER is a male who appeared to be Hispanic, was short and slim, and was wearing a short haircut and bomber jacket at the time of the incident and arrest in question.

**22.**    Defendant "Jane Doe" POLICE OFFICER is female who appeared to be Hispanic, was short, was wearing her hair in a bun, and was wearing a police uniform at the time of the incident and arrest in question.

**23.**    Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON will amend this complaint to name the Defendant "John Doe ___" POLICE OFFICERS as their identities can be established to a reasonable certainty.

**24.**    That at all times hereinafter mentioned, the Defendant New York City Police Officers (individually, "Defendant 'John Doe ___' POLICE OFFICER"; or "Defendant POLICE OFFICER ___"; and collectively, "Defendant POLICE OFFICERS"), were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

**25.**    That at all times relevant to this action, Defendant POLICE OFFICERS, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

**26.**    Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said Defendants while acting within the scope of their employment by Defendant CITY OF NEW YORK.

**27.**    Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said Defendants while acting in furtherance of their employment by Defendant CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

**28.**    The events described herein took place on and after Wednesday, November 30, 2011.

**29.**    On November 30th, 2011, at or around 4:00pm, Plaintiff JAMAANE NELSON parked his car outside the home of a friend and coworker ("Friend") who lived in the Bronx, New York.

**30.**    Plaintiff JAMAANE NELSON was meeting Friend before carpooling into work at a local movie theater.

**31.**    Plaintiff JAMAANE NELSON and Friend met at the home to carpool every time that they worked together.

**32.**    At or around this time, Plaintiff JAMAANE NELSON began approaching Friend's single family home ("the home").

**33.** As Plaintiff JAMAANE NELSON was approaching the home, he spotted a Crown Victoria ("the car") that was occupied by three adult males ("stranger(s)") whom Plaintiff JAMAANE NELSON did not recognize.

**34.** At or around this time, the stranger who was sitting in the back of the car called and motioned Plaintiff JAMAANE NELSON over to the car.

**35.** As Plaintiff JAMAANE NELSON did not recognize the car or any of its occupants and was not accustomed to walking up to people whom he did not recognize, he continued walking toward the home.

**36.** Upon information and belief, individuals who are called and motioned over to vehicles that they do not recognize as official vehicles and are occupied by people whom the individual does not know will often decide against approaching the vehicle owning to the individuals' need to protect his or her own safety.

**37.** Upon information and belief, a common maxim that advises individuals young and old how to protect their personal safety is "Never talk to strangers."

**38.** As a child, Plaintiff JAMAANE NELSON was instructed to never talk to strangers.

**39.** Plaintiff JAMAANE NELSON did not approach the car because he recognized neither the Crown Victoria nor any of the strangers within the vehicle.

**40.** As Plaintiff JAMAANE NELSON entered the home's front door ("the front door"), he greeted Friend's grandfather ("Friend's Grandfather") who was standing in the nearby kitchen.

**41.** Shortly thereafter, Plaintiff JAMAANE NELSON began walking up the home's interior stairway ("the stairway") in order to meet Friend in his bedroom, where Plaintiff JAMAANE NELSON and Friend would usually hang out before work.

**42.** At or around this time, Friend's Grandfather moved from the home's kitchen and walked toward the front door.

**43.** At or around this time, Plaintiff JAMAANE NELSON heard a loud banging at the front door.

**44.** Shortly thereafter, Plaintiff JAMAANE NELSON, standing at the top of the stairway, observed the front door slam open.

**45.** Plaintiff JAMAANE NELSON observed the front door strike Friend's Grandfather, thereby causing him to fall over.

**46.** Shortly thereafter, Plaintiff JAMAANE NELSON observed two individuals ——— whom he did not recognize as the strangers from the aforementioned car ——— rush into the home.

**47.** One of the strangers was brandishing a can of pepper spray as he entered the home.

**48.** The other stranger was holding a gun as he entered the home.

**49.** At or after this time, either or both of the two strangers (henceforth, individually "Defendant POLICE OFFICER RODA" and "Defendant "John Doe I" POLICE OFFICER", or collectively with other Defendant POLICE OFFICERS, ("Defendant POLICE OFFICERS") identified themselves as members of the New York City Police Department by yelling, in sum and substance, "Police! Get the fuck down!"

**50.** On information and belief, neither Defendant POLICE OFFICER RODA nor Defendant "John Doe I" POLICE OFFICER had knocked on the front door before rushing into the home.

**51.** Neither Defendant POLICE OFFICER RODA nor Defendant "John Doe I" identified himself as a police officer before entering the home.

**52.** Neither Defendant POLICE OFFICER RODA nor Defendant "John Doe I" POLICE OFFICER announced himself as a police officer before rushing into the home.

**53.** Neither Defendant POLICE OFFICER RODA nor Defendant "John Doe I" POLICE OFFICER presented a warrant to enter the home before rushing into the same.

**54.** Neither Defendant POLICE OFFICER RODA nor Defendant "John Doe I" POLICE OFFICER presented a warrant to enter the home after rushing into the same.

**55.** Upon information and belief, neither Defendant POLICE OFFICER RODA nor Defendant "John Doe I" POLICE OFFICER had a warrant to enter the home.

**56.** Neither Defendant POLICE OFFICER RODA nor Defendant "John Doe I" POLICE OFFICER were wearing police uniforms when they rushed into the home.

**57.** At no point before Defendant POLICE OFFICER RODA's and Defendant "John Doe I" POLICE OFFICER's self-identification and act of rushing into the home did either Defendant POLICE OFFICER RODA or Defendant "John Doe I" POLICE OFFICER identify himself as a police officer.

**58.** At or around this time, Defendant POLICE OFFICER RODA and Defendant "John Doe I" POLICE OFFICER began walking up the stairway.

**59.** At or around this time, Defendant POLICE OFFICER RODA was standing approximately four feet away from Plaintiff JAMAANE NELSON.

**60.** At or around this time, Defendant POLICE OFFICER RODA pepper sprayed Plaintiff JAMAANE NELSON before Plaintiff JAMAANE NELSON could comply with the Defendant POLICE OFFICERS' order to, in sum and substance, "Get the fuck down."

**61.** Defendant POLICE OFFICER RODA pepper sprayed Plaintiff JAMAANE NELSON in his eyes.

**62.** At or around this time, Defendant POLICE OFFICER RODA pushed Plaintiff JAMAANE NELSON to the floor.

**63.** At or around this time, Plaintiff JAMAANE NELSON scraped his left arm against the hinges of a door near the top of the stairway.

**64.** Plaintiff JAMAANE NELSON was not carrying a weapon.

**65.** Plaintiff JAMAANE NELSON had not lunged toward, swung at, or in any way threatened to use force against either Defendant POLICE OFFICER RODA or Defendant "John Doe I" POLICE OFFICER.

**66.** Plaintiff JAMAANE NELSON had not raised his voice or used offensive language toward either Defendant POLICE OFFICER RODA or Defendant "John Doe I" POLICE OFFICER.

**67.** Defendant POLICE OFFICER RODA had no reason to pepper spray and subsequently push Plaintiff JAMAANE NELSON to the floor.

**68.** At no point before, after or during Defendant POLICE OFFICER RODA's acts of pepper spraying and pushing Plaintiff JAMAANE NELSON to the floor did Defendant "John Doe I" POLICE OFFICER in any way attempt to prevent, stop, or otherwise obstruct Defendant POLICE OFFICER RODA from doing the same.

**69.** At or around this time, Defendant POLICE OFFICER RODA handcuffed Plaintiff JAMAANE NELSON.

**70.** Shortly thereafter, Defendant POLICE OFFICER RODA kicked Plaintiff JAMAANE NELSON in the face.

**71.** At no point prior to Defendant POLICE OFFICER RODA's handcuffing of Plaintiff JAMAANE NELSON did he attempt to run away from Defendant POLICE OFFICER RODA.

**72.** At all times prior to Defendant POLICE OFFICER RODA's handcuffing of Plaintiff JAMAANE NELSON, Plaintiff JAMAANE NELSON complied with Defendant POLICE OFFICER RODA's orders, instructions, and commands.

**73.** Defendant POLICE OFFICER RODA had no reason to handcuff Plaintiff JAMAANE NELSON and subsequently kick him in the face.

**74.** At no point before, during, or after Defendant POLICE OFFICER RODA's acts of handcuffing and kicking Plaintiff JAMAANE NELSON in the face did Defendant "John Doe I" POLICE OFFICER in any way attempt to prevent, stop, or otherwise obstruct Defendant POLICE OFFICER RODA from doing the same.

**75.** At or around this time, Defendant POLICE OFFICER RODA asked Plaintiff JAMAANE NELSON, in sum and substance, "Why did you run?"

**76.** Plaintiff JAMAANE NESLON, recently handcuffed and kicked in the face by Defendant POLICE OFFICER RODA, could not respond owning to the pepper spray that was burning his face and eyes.

**77.** At or around this time, Defendant POLICE OFFICER RODA stated to Plaintiff JAMAANE NELSON, in sum and substance, "You're a fucking idiot for running. Don't you know when a police officer calls you, you come?"

**78.**  At or around this time, Defendant POLICE OFFICER RODA again kicked Plaintiff JAMAANE NELSON in the face and asked him, in sum and substance, "Why did you run?"

**79.**  Owing to the pepper spray that was burning his face and eyes, Plaintiff JAMAANE NELSON was still unable to respond to Defendant POLICE OFFICER RODA's question.

**80.**  At or around this time, Defendant POLICE OFFICER RODA stated to Plaintiff JAMAANE NELSON, in sum and substance, "Don't you recognize us, shut the fuck up."

**81.**  Plaintiff JAMAANE NELSON was emotionally hurt and disturbed as a result of being cursed at by Defendant POLICE OFFICER RODA.

**82.**  At or around this time, Defendant POLICE OFFICER "John Doe I" began making threatening faces at Plaintiff JAMAANE NELSON.

**83.**  At or around this time, Defendant POLICE OFFICER HOUST began making faces at Plaintiff JAMAANE NELSON that Plaintiff JAMAANE NELSON perceived as threatening.

**84.**  At or around this time, Defendant POLICE OFFICER RODA picked Plaintiff JAMAANE NELSON up from the floor of the home.

**85.**  Shortly thereafter, Defendant POLICE OFFICER RODA —— followed by Defendant "John Doe I" POLICE OFFICER —— walked Plaintiff JAMAANE NELSON out of the home and put him in the rear passenger seat of the same aforementioned car.

**86.**  Shortly thereafter, Defendant POLICE OFFICER RODA sat in the front passenger seat of the car and was joined by Defendant "John Doe I" POLICE OFFICER who sat in the rear driver's side seat of the car, and Defendant "John Doe II" POLICE OFFICER who sat in the driver's seat of the car.

**87.**  Shortly thereafter, Defendant "John Doe II" POLICE OFFICER began driving the car toward the 47th Precinct.

**88.**  Prior to the incident and arrest in question, Plaintiff JAMAANE NELSON had never been in police custody.

**89.**  Plaintiff JAMAANE NELSON was scared, embarrassed and humiliated as a result of being subjected to the Defendant POLICE OFFICERS' conduct.

**90.**  At or around this time, while en route to the 47th Precinct, Defendant POLICE OFFICER RODA turned around from the front passenger seat of the car and struck Plaintiff JAMAANE NELSON's face with a collapsible metal baton.

**91.**  At or around this time, Defendant POLICE OFFICER RODA again asked Plaintiff JAMAANE NELSON, in sum and substance, "Why did you run, why did you make me run?"

**92.**  In response, Plaintiff JAMAANE NELSON stated, in sum and substance, "I didn't know who you were."

**93.**    In response, Defendant POLICE OFFICER RODA stated, in sum and substance, "Shut the fuck up."

**94.**    At or around this time, Defendant POLICE OFFICER RODA again struck Plaintiff JAMAANE NELSON's face with the same collapsible metal baton.

**95.**    Defendant POLICE OFFICER RODA's act of striking Plaintiff JAMAANE NELSON caused Plaintiff JAMAANE NELSON's face to swell.

**96.**    At or around this time, Defendant POLCE OFFICER RODA told Plaintiff JAMAANE NELSON, in sum and substance, "It's not over until we get to the precinct. Wait until we get to the precinct. It's not over yet."

**97.**    At no point before, during, or after Defendant POLICE OFFICER RODA's acts of striking Plaintiff JAMAANE NELSON in the face with the same collapsible metal baton did either Defendant "John Doe I" or Defendant "John Doe II" POLICE OFFICER in any way attempt to prevent, stop, or otherwise obstruct Defendant POLICE OFFICER RODA from doing the same.

**98.**    At or around this time, approximately ten minutes after Defendant POLICE OFFICER RODA placed Plaintiff JAMAANE NELSON in the rear passenger seat of the car, Defendant POLICE OFFICER RODA, Defendant "John Doe I" POLICE OFFICER, and Defendant "John Doe II" POLICE OFFICER arrived at the 47th Precinct with Plaintiff JAMAANE NELSON.

**99.**    Shortly thereafter, one or more of the Defendant POLICE OFFICERS walked Plaintiff JAMAANE NELSON into the 47th Precinct.

**100.**    At or around this time, Plaintiff JAMAANE NELSON's eyes were still burning from the pepper spray that Defendant POLICE OFFICER RODA had previously sprayed him with.

**101.**    After one or more of the Defendant POLICE OFFICERS walked Plaintiff JAMAANE NELSON into the 47th Precinct, Plaintiff JAMAANE NELSON asked one or more of the Defendant POLICE OFFICERS for water.

**102.**    Plaintiff JAMAANE NELSON asked for water in order to wash from his eyes the pepper spray that Defendant POLICE OFFICER RODA had previously sprayed him with.

**103.**    In response, none of the Defendant POLICE OFFICERS provided Plaintiff JAAMANE NELSON water.

**104.**    At or around this time, one or more of the Defendant POLICE OFFICERS removed Plaintiff JAMAANE NELSON's handcuffs.

**105.**    At or around this time, one or more of the Defendant POLICE OFFICERS performed a strip search of Plaintiff JAMAANE NELSON.

**106.**    In executing this strip search, one or more of the Defendant POLICE OFFICERS ordered Plaintiff JAMAANE NELSON to remove all of his clothes except for his underwear.

**107.** Plaintiff JAMAANE NELSON complied.

**108.** Plaintiff JAMAANE NELSON was embarrassed by having to suffer this highly invasive strip search.

**109.** In executing this strip search, the Defendant POLICE OFFICERS failed to find any sort of controlled or illegal substances in the possession of Plaintiff JAMAANE NELSON.

**110.** Following this strip search, Defendant POLICE OFFICER RODA falsely stated to Plaintiff JAMAANE NELSON, in sum and substance, "We found thirty bags of crack and weed on you."

**111.** In response, Plaintiff JAMAANE NELSON stated, in sum and substance, "I have never touched crack or weed in my life."

**112.** In response, Defendant POLICE OFFICER RODA falsely told Plaintiff JAMAANE NELSON that he was being charged with criminal possession of a controlled substance.

**113.** At or around this time, one or more of the Defendant POLICE OFFICERS put Plaintiff JAMAANE NELSON into a holding cell within the 47th Precinct.

**PLAINTIFF JAMAANE NELSON'S FAMILY
ARRIVE AT THE 47TH PREINCT**

**114.** At or around 5:00pm Plaintiff JAMAANE NELSON's two sisters ("Plaintiff's Sister I", and "Plaintiff's Sister II"), Plaintiff JAMAANE NELSON's brother ("Plaintiff's Brother"), and Plaintiff JAMAANE NELSON's biological father (Plaintiff's Father), (Collectively, "Plaintiff's family"), arrived at the 47th Precinct.

**115.** Friend's Grandfather had already arrived at the 47th Precinct before any of Plaintiff's family.

**116.** At or around this time, Plaintiff's Sister I approached Defendant "John Doe II" POLICE OFFICER who was sitting behind the front desk of the 47th Precinct.

**117.** At or around this time, Plaintiff's Sister I asked Defendant "John Doe II" POLICE OFFICER, in sum and substance, "What information do you have about JAMAANE NELSON?"

**118.** In response, Defendant "John Doe II" POLICE OFFICER stated, in sum and substance, "You'll have to wait, the officers are speaking with another family."

**119.** Shortly thereafter, Defendant "John Doe II" POLICE OFFICER left the area.

**120.** Approximately thirty minutes later Defendant "John Doe II" POLICE OFFICER returned and falsely told Plaintiff's family that the Defendant POLICE OFFICERS arrested Plaintiff JAMAANE NELSON because they had found drugs on him.

**121.** At or around this time, one or more of the Defendant POLICE OFFICERS asked one of his colleagues in sum and substance, "Did JAMAANE NELSON kick down the home's front door?"

122.  In response, one or more of the Defendant POLICE OFFICERS falsely stated, in sum and substance, "Yes, JAMAANE NELSON kicked down the home's front door."

123.  Shortly thereafter, Sister I stated, in sum and substance, "That is not right, is it?"

124.  In response, one or more of the Defendant POLICE OFFICERS stated to Sister I, in sum and substance, "That's not your job, you're not a lawyer.

125.  Shortly thereafter, one or more of the Defendant POLICE OFFICERS asked Friend's Grandfather, in sum and substance, "Did JAMAANE NELSON kick down the home's front door?"

126.  In response, Friend's Grandfather stated, in sum and substance, "No, one of the POLICE OFFICERS kicked down the home's front door."

127.  Shortly thereafter, one or more of the Defendant POLICE OFFICERS again asked Friend's Grandfather, in sum and substance, "Did JAMAANE NELSON kick down the home's front door?"

128.  In response, Friend's Grandfather again stated, in sum and substance, "No, the cops kicked down the door."

129.  Shortly thereafter, the Defendant POLICE OFFICER who had been inquiring as to who kicked down the home's front door left the area of the 47th Precinct where Plaintiff's family and Friend's Grandfather were standing.

130.  Approximately thirty minutes later, the same Defendant POLICE OFFICER returned to the area of the 47th Precinct where Plaintiff's family and Friend's Grandfather were standing.

131.  At or around this time, one of the Defendant POLICE OFFICERS told Plaintiff's Father, in sum and substance, "I kicked down the home's door."

132.  Shortly thereafter, the same Defendant POLICE OFFICER told Plaintiff's Father, in sum and substance, "We did not arrest JAMAANE NELSON for drugs but for something else."

133.  Upon information and belief, the same Defendant POLICE OFFICER told Plaintiff's Father conflicting and apparently fabricated reasons as to why the Defendant POLICE OFFICERS arrested Plaintiff JAMAANE NELSON because the Defendant POLICE OFFICERS had neither a valid nor a legal reason to arrest Plaintiff JAMAANE NELSON.

134.  Upon information and belief, the same Defendant POLICE OFFICER told Plaintiff's Father conflicting and apparently fabricated reasons as to why the Defendant POLICE OFFICERS arrested Plaintiff JAMAANE NELSON because the Defendant POLICE OFFICERS did not have a cognizable basis for arresting Plaintiff JAMAANE NELSON.

135.  At or around this time, one or more of the Defendant POLICE OFFICERS stated to Plaintiff's Father, in sum and substance, "You're a failure as a father because you did not teach JAMAANE NELSON not to run from police officers."

**136.** In response, Plaintiff's Sister I asked the same Defendant POLICE OFFICER, in sum and substance, "What if someone is harassed?"

**137.** In response, the same Defendant POLICE OFFICER stated, in sum and substance, "I don't believe in harassment."

## PLAINTFF GRACE NELSON AND HER FIANCEE ARRIVE AT THE 47th PRECINT

**138.** At or around 7:00pm on November 30th, 2011, Plaintiff JAMAANE NELSON's mother, Plaintiff GRACE NELSON arrived at the 47th Precinct.

**139.** Shortly after her arrival, Plaintiff GRACE NELSON saw Defendant "John Doe II" sitting at the front desk of the 47th Precinct.

**140.** At or around this time, Plaintiff GRACE NELSON's fiancée (Plaintiff's Fiancée) was waiting in his car in the parking lot of the 47th Precinct.

**141.** Shortly after her arrival, Plaintiff GRACE NELSON asked Defendant "John Doe II" POLICE OFFICER, who was sitting at the front desk of the 47th Precinct, in sum and substance, "Where is my son, JAMAANE NELSON?"

**142.** At or around this time, Plaintiff GRACE NELSON asked Defendant "John Doe II" POLICE OFFICER, in sum and substance, "Which police officer arrested my son, what is his name?"

**143.** In response, Defendant "John Doe II" POLICE OFFICER stated, in sum and substance, "JAMAANE NELSON's arresting officer is POLICE OFFICER RODA who is currently downstairs."

**144.** In response, Plaintiff GRACE NELSON asked, in sum and substance, "Can I speak with POLICE OFFICER RODA?"

**145.** In response, Defendant "John Doe II" POLICE OFFICER stated, in sum and substance, "POLICE OFFICER RODA has gone out and will not be coming back this evening."

**146.** In response, Plaintiff GRACE NELSON asked, in sum and substance, "Can I speak to a supervisor?"

**147.** In response, Defendant "John Doe II" POLICE OFFICER stated, in sum and substance, "No, you cannot speak to a supervisor."

**148.** At or around this time, Defendant POLICE OFFICER HOUST appeared within the area of the 47th Precinct where Plaintiff GRACE NELSON was standing.

**149.** Shortly thereafter, Defendant POLICE OFFICER HOUST told Plaintiff GRACE NELSON, in sum and substance, "It's time for you to get out."

**150.** At or around this time, Plaintiff GRACE NELSON was standing near the front doorway of the 47th Precinct.

**151.** At or around this time, Plaintiff GRACE NELSON was holding a purse in her hands.

**152.** At or around this time, the doors leading to the vestibule and steps at the front of the 47th Precinct were open.

**153.** At or around this time, Defendant POLICE OFFICER HOUST shoved Plaintiff GRACE NELSON.

**154.** Shortly thereafter, Plaintiff GRACE NELSON stated to Defendant POLICE OFFICER HOUST, in sum and substance, "Do not touch me."

**155.** In response, Defendant POLICE OFFICER HOUST stated, "Get the fuck out."

**156.** Shortly thereafter, Defendant POLICE OFFICER HOUST again shoved Plaintiff GRACE NELSON.

**157.** At or around this time, Plaintiff's Fiancée left Plaintiff's car in the 47th Precinct's parking lot and walked toward the 47th Precinct's front entrance.

**158.** At or around this time, Plaintiff's Fiancée observed Defendant POLICE OFFICERS HOUST shove Plaintiff GRACE NELSON.

**159.** Shortly thereafter, Plaintiff's Fiancée attempted to prevent Plaintiff GRACE NELSON from falling down the front steps of the 47th Precinct.

**160.** Despite his efforts, Plaintiff's Fiancée was unable to prevent Plaintiff GRACE NELSON from falling down the front steps of the 47th Precinct and landing on her back at the bottom of the same.

**161.** Defendant POLICE OFFICER HOUST's second shove of Plaintiff GRACE NELSON caused her to drop her purse and fall down the front steps of the 47th Precinct.

**162.** Shortly thereafter, Defendant POLICE OFFICER HOUST threw Plaintiff GRACE NELSON's purse down the front steps of the 47th Precinct.

**163.** Plaintiff GRACE NELSON was physically hurt and highly embarrassed to have fallen down the front steps of the 47th Precinct as a result of Defendant POLICE OFFCER HOUST's act of shoving her down the same.

**164.** As a result of Defendant POLICE OFFICER HOUST's act of shoving her down the front steps of the 47th Precinct, Plaintiff GRACE NELSON experienced pain and discomfort from the injuries to her back for approximately five days following the incident.

**165.** At no point before, during, or after Defendant POLICE OFFICER HOUST's acts of cursing at and shoving Plaintiff GRACE NELSON down the steps of the 47th Precinct did Defendant "John Doe II" POLICE OFFICER in any way attempt to prevent, stop, or otherwise obstruct Defendant POLICE OFFICER HOUST from doing the same.

**166.** At or around this time, one or more of the Defendant POLICE OFFICERS attempted to pull Plaintiff GRACE NELSON off of the ground in the vestibule of the 47th Precinct.

**167.** At or around this time, due to the painful injuries that Plaintiff GRACE NELSON suffered as a result of being shoved down the front steps of the 47th Precinct by Defendant POLICE OFFICER HOUST, one or more of the Defendant POLICE OFFICERS called an ambulance for Plaintiff GRACE NELSON.

**168.** At or around this time, despite the fact that Plaintiff GRACE NELSON was lying on the ground just outside of the 47th Precinct and awaiting an ambulance, one or more of the Defendant POLICE OFFICERS handcuffed and arrested Plaintiff GRACE NELSON.

**169.** At or around this time, Defendant POLICE OFFICER HOUST began to pick up Plaintiff GRACE NELSON by grabbing her by her wrists.

**170.** Plaintiff GRACE NELSON screamed in pain.

**171.** At or around this time, Defendant POLICE OFFICER HOUST picked up and searched Plaintiff GRACE NELSON's purse.

**172.** Shortly thereafter, Defendant POLICE OFFICER HOUST removed Plaintiff GRACE NELSON's license from her purse.

**173.** At no point prior to the Defendant POLICE OFFICERS' arrest of Plaintiff GRACE NELSON had she raised her voice or used offensive language toward the Defendant POLICE OFFICERS.

**174.** At no point prior to the Defendant POLICE OFFICERS' arrest of Plaintiff GRACE NELSON had she lunged toward, swung at, or in any way threatened to use force against the Defendant POLICE OFFICERS.

**175.** Plaintiff GRACE NELSON was not carrying a weapon of any type.

**176.** The Defendant POLICE OFFICERS had no legally cognizable reason to arrest Plaintiff GRACE NELSON.

**177.** Upon information and belief, the Defendant POLICE OFFICERS arrested Plaintiff GRACE NELSON in order to retroactively justify their use of force against her.

**178.** At or around this time, an ambulance arrived outside of the 47th Precinct for Plaintiff GRACE NELSON.

**179.** Shortly thereafter, one or more of the Defendant POLICE OFFICERS accompanied Plaintiff GRACE NELSON, still handcuffed, to the emergency room of Montefiore Medical Center.

**180.** Shortly after Plaintiff GRACE NELSON's arrival at the emergency room of Montefiore Medical Center she observed one of the Defendant POLICE OFFICERS who had accompanied her there take a phone call.

**181.** Upon information and belief, the phone call that the same Defendant POLICE OFIFCER received was from one of the Defendant POLICE OFFICERS at the 47th Precinct.

**182.** Upon information and belief, the Defendant POLICE OFFICER who was on the phone from the 47th Precinct instructed the Defendant POLICE OFFICER who had taken

the phone call in the emergency room of Montefiore Medical Center to take the handcuffs off of GRACE NELSON immediately because officers from the Internal Affairs Bureau would be arriving at the same hospital shortly.

**183.** The Internal Affairs Bureau ("IAB") is the division of the New York City Police Department that is responsible for investigating allegations of corruption and serious misconduct by police officers.

**184.** Upon information and belief, the Defendant POLICE OFFICER who had taken the phone call in the emergency room of the Montefiore Medical Center responded to the Defendant POLICE OFFICER who had called from the 47th Precinct by asking, in sum and substance, "Why do you want us to do that, are you sure?" and then stating, in sum and substance, "Okay."

**185.** Shortly after this phone call, one or more of the Defendant POLICE OFFICERS who had accompanied Plaintiff GRACE NELSON to Montefiore Medical Center removed her handcuffs.

**186.** Approximately ten minutes later, two IAB officers appeared in the emergency room where one or more of the Defendant POLICE OFFICERS were waiting with Plaintiff GRACE NELSON.

**187.** Upon information and belief, the Defendant POLICE OFFICERS removed Plaintiff GRACE NELSON's handcuffs because they did not want to face discipline from the IAB for either shoving Plaintiff GRACE NELSON down the stairs of the 47th Precinct or for unnecessarily handcuffing her.

**188.** Upon information and belief, the IAB would deem all of the conduct mentioned in the preceding paragraph misconduct by police officers.

**189.** After a time, Plaintiff GRACE NELSON was released from Montefiore Medical Center.

**190.** Upon information and belief, the Defendant POLICE OFFICERS intended to charge Plaintiff GRACE NELSON with disorderly conduct following her arrest.

**191.** Upon information and belief, the Defendant POLICE OFFICERS' arrest of Plaintiff GRACE NELSON was a "contempt of cop" arrest.

**192.** Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they may arise out of nearly any police-civilian interactions.

**193.** Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they can be levied solely upon the allegations of the arresting officer(s) without reference to physical evidence or witness observation of criminal acts

15

**194.** Upon information and belief, and despite due and repeated notice that New York City POLICE OFFICERS have an ongoing custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, to date, Defendant City of New York has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City police officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

**195.** The particular arrest of Plaintiff GRACE NELSON is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because they were undertaken in a manner which indicated that the individual Defendants who participated in Plaintiff GRACE NELSON's arrest made the determination to arrest her before determining why she should be arrested.

**196.** Further information relating to the above constitutionally impermissible conduct of Defendants can be found in the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**197.** As a result of the Defendants' constitutionally impermissible conduct, Plaintiff GRACE NELSON suffered ongoing physical pain for five days following the incident and arrest in question, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to her reputation and standing within her community.

**198.** As a result of Defendants' constitutionally impermissible conduct, Plaintiff GRACE NELSON demands judgment against Defendants in a sum of money to be determined at trial.

### DEFEDNANT POLICE OFFICERS
### CONTINUE THEIR HARASSMENT OF PLAINTIFF
### JAMAANE NELSON AND PLAINTIFF GRACE NELSON'S FAMILY

**199.** Not long after the aforementioned ambulance left the 47th Precinct, one or more of the Defendant POLICE OFFICERS stated to Plaintiff's family and Friend's Grandfather, in sum and substance, "Get out."

**200.** Shortly thereafter, Defendant POLICE OFFICER HOUST stated to Plaintiff's family and Friend's Grandfather, in sum and substance, "Get the fuck out of our house."

**201.** Upon information and belief, Defendant POLICE OFFICER HOUST's, in sum and substance, "Get the fuck out of our house", statement evidences a policy, custom, or practice of Defendant CITY OF NEW YORK's New York Police Department that Defendant POLICE OFFICERS were following in which individuals, such as Plaintiff's family, who are seeking information regarding recent arrests are in no way welcome at police precincts and are often retaliated against for their mere presence within the same precinct.

**202.** Upon information and belief, Defendant POLICE OFFICER HOUST's, in sum and substance, "Get the fuck out of our house" statement evidences a policy, custom, or practice of Defendant CITY OF NEW YORK's New York Police Department that members of the NYPD follow in which individuals, such as Plaintiff's family, who are seeking information regarding recent arrests are in no way welcome at police precincts and are often retaliated against for their mere presence within the same precinct.

**203.** Upon information and belief, Defendant POLICE OFFICER HOUST's, in sum and substance, "Get the fuck out of our house" statement evidences a policy, custom, or practice of Defendant CITY OF NEW YORK's New York Police Department in the Bronx, New York, in which individuals, such as Plaintiff's family, who are seeking information regarding recent arrests are in no way welcome at police precincts and are often retaliated against for their mere presence within the same precinct.

**204.** Upon information and belief, the same Defendant POLICE OFFICER's statement "Get the fuck out of our house" evidences a policy, custom, or practice of Defendant CITY OF NEW YORK's New York Police Department specific to the Bronx, New York's 41st, 42nd, and 47th Precincts.

**205.** The previously stated policy, custom, or practices involves officers' targeting of minority individuals, charging them with crimes relating to drug possession, and then subjecting them — and members of their family who are requesting information regarding the arrest — to excessive force either or both at the time of the individuals' arrest as well as following the individuals' or their family's arrival at the same precinct.

**206.** Further information relating to the above constitutionally impermissible custom, practices, and policies of Defendants can be found in the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**207.** At or around this time, one or more of the Defendant POLICE OFFICERS shoved Plaintiff's Father, Plaintiff's Sister I, Plaintiff's Sister II, and Plaintiff's Brother.

**208.** At no point prior to the Defendant POLICE OFFICERS' shoving of Plaintiff's family and friends had any of Plaintiff's family and friends raised their voices or used offensive language toward the Defendant POLICE OFFICERS.

**209.** At no point prior to the Defendant POLICE OFFICERS' shoving of Plaintiff's family and friends had any of Plaintiff's family and friends, lunged toward, swung at, or in any way threatened to use force against the Defendant POLICE OFFICERS.

**210.** The Defendant POLICE OFFICERS had no reason to shove or use any level or type of physical force against Plaintiff's family and friends.

**211.** At or around this time, Plaintiff's Sister II was using her cell phone to record the incident in question.

**212.** At or around this time, Defendant "Jane Doe" POLICE OFFICER shoved Plaintiff's Sister II.

**213.** Shortly thereafter, Defendant "Jane Doe" POLICE OFFICER knocked Plaintiff's Sister's II cell phone out of her hand.

**214.** At or around this time, Plaintiff's Sister II tried to recollect her cell phone amongst the chaos that the Defendant POLICE OFFICERS had created by shoving and using offensive language toward Plaintiff's family and friends.

**215.** Upon information and belief, Defendant "Jane Doe" POLICE OFFICER knocked Plaintiff's Sister's II cell phone out of her hand because she, Defendant "Jane Doe" POLICE OFFICER, was following Defendant CITY OF NEW YORK'S and the New York City Police Department's policy, practice, or custom of harassing and arresting onlookers documenting or commenting upon arrests in progress.

**216.** This custom, policy, practice has continued despite the consent decree entered into by Defendant CITY OF NEW YORK in <u>Black v. Codd</u>, 73 Civ. 5283 (S.D.N.Y. June 1, 1977).

**217.** This custom, policy, or practice has continued despite the NYPD Patrol Guide § 208-03 subsection "Observers at the Scene of Police Incidents" which provides, in relevant part, that "Taking photographs, videotapes, or tape recordings [of police activity will not constitute probable cause for arrest or detention of an onlooker unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated.]"

**218.** Plaintiff Sister's II act of using her cell phone to record the police activity in the 47th Precinct did not endangered neither the safety of the officers nor any of the other persons present.

**219.** Upon information and belief, the Defendant POLICE OFFICERS did not reasonably believe that Plaintiff Sister's II act of using her cell phone to record the police activity in the 47th Precinct endangered the safety of the officers or any other persons present.

**220.** Plaintiff Sister's II act of using her cell phone to record the police activity in the 47th Precinct did not constitute any illegal activity of any kind or type.

**221.** Further information relating to the above constitutionally impermissible conduct of Defendants can be found in the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**222.** At or around this time, Plaintiff's Sister I approached the front desk of the 47th Precinct and stated to one or more of the Defendant POLICE OFFICERS sitting behind the desk, in sum and substance, "I want to file a complaint."

**223.** Shortly thereafter, one or more of the Defendant POLICE OFFICERS did not respond to Plaintiff's Sister's I statement.

**224.** Shortly thereafter, Plaintiff's Sister I restated, in sum and substance, "I want to file a complaint for this incident, how do I do that?"

**225.** Shortly thereafter, one or more of the Defendant POLICE OFFICERS continued to ignore Plaintiff's Sister I.

**226.** Plaintiff's Sister I repeated this statement approximately five times.

**227.** Shortly thereafter, the Defendant POLICE OFFICERS who were sitting behind the desk of the 47th Precinct stood up and walked away from Plaintiff's Sister I.

**228.** At no point did any of the Defendant POLICE OFFICERS who were sitting behind the 47th Precinct's front desk respond to Plaintiff's Sister's I repeated questions.

**229.** At no point did any of the Defendant POLICE OFFICERS who were sitting behind the 47th Precinct's front desk instruct Plaintiff's Sister I how to file a complaint with the New York City Civilians Complaint Review Board ("CCRB"), the Commission to Combat Police Corruption ("CCPC"), New York Police Department Internal Affairs Bureau ("IAB"), or the New York State Attorney General's Civil Rights Bureau ("AGCRB").

## PLAINTIFF JAMAANE NELSON'S TRANSFER
## TO CENTRAL BOOKING AND EVENTUAL RELEASE

**230.** At or around 2:00am on Thursday, December 1, 2011, one or more of the Defendant POLICE OFFICERS removed Plaintiff JAMAANE NELSON from the holding cell within the 47th Precinct that the Defendant POLICE OFFICERS had locked him in approximately seven hours before.

**231.** Shortly thereafter, the Defendant POLICE OFFICERS transferred Plaintiff JAMAANE NELSON to central booking.

**232.** Shortly after arriving at central booking, one or more of the Defendant POLICE OFFICERS put Plaintiff JAMAANE NELSON into a holding cell within central booking.

**233.** Aside from the Defendant POLICE OFFICERS' removal of Plaintiff JAMAANE NELSON from the same holding cell within the central booking in order to subject him to a strip search, the Defendant POLICE OFFICERS would keep Plaintiff JAMAANE NELSON locked within the same holding cell of central booking until approximately 11:00pm that same evening.

**234.** At or around this time, one or more of the Defendant POLICE OFFICERS searched and patted down Plaintiff JAMAANE NELSON.

**235.** In executing this strip search, one or more of the Defendant POLICE OFFICERS ordered Plaintiff JAMAANE NELSON to remove all of his clothes except for his underwear.

**236.** Plaintiff JAMAANE NELSON was embarrassed by having to suffer this second highly invasive strip search.

**237.** In executing this strip search, the Defendant POLICE OFFICERS failed to find any sort of controlled or illegal substances in the possession of Plaintiff JAMAANE NELSON.

**238.** At or around this time, the Defendant POLICE OFFICERS released Plaintiff JAMAANE NELSON from the same holding cell within central booking.

**239.** At or around this time, one or more of the Defendant POLICE OFFICERS stated to Plaintiff JAMAANE NELSON, in sum and substance, "You are free to go, we do not have any charges for you."

**240.** The Defendant POLICE OFFICERS released Plaintiff from central booking without filing any charges against him because Plaintiff JAMAANE NELSON did not have any warrants out for his arrest, was not in possession of any controlled or illegal substances, and was all-together not engaged in any illegal conduct of any sort or type when the Defendant POLICE OFFICERS arrested him.

**241.** Upon information and belief, the Defendant POLICE OFFICERS' arrest of Plaintiff JAMAANE NELSON was a "contempt of cop" arrest.

**242.** Upon information and belief, and despite due and repeated notice that New York City POLICE OFFICERS have an ongoing policy, custom, or practice of arresting individuals in the absence of probable cause as personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrest.

**243.** The particular arrest of Plaintiff JAMAANE NELSON is believed to have been motivated in whole or in part by the aforesaid policy, custom, or practice of arresting individuals in the absence of probable cause for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrest because the Defendant POLICE OFFICERS who participated in Plaintiff JAMAANE NELSON's arrest made the determination to arrest him before determining why he should be arrested.

**244.** Upon information and belief, the arrest of the Plaintiff JAMAANE NELSON was motivated wholly by the Defendant POLICE OFFICERS need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

**245.** Upon information and belief, the arrest of the Plaintiff JAMAANE NELSON was motivated in part by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

**246.** Upon information and belief, the arrest of the Plaintiff JAMAANE NELSON was motivated wholly by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK'S police department.

**247.** Upon information and belief, the arrest of the Plaintiff JAMAANE NELSON was motivated in part by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK'S police department.

**248.** The particular arrest of Plaintiff JAMAANE NELSON is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

**249.** The particular arrest of the Plaintiff JAMAANE NELSON is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff JAMAANE NELSON's

arrest made the determination to arrest him before determining why he should be arrested.

**250.** The particular arrest of Plaintiff JAMAANE NELSON is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because Plaintiff JAMAANE NELSON was arrested after it was already established that he was not carrying any weapons or illegal substances, did not have any outstanding warrants against him, and was not engaged in illegal conduct of any kind just before the time of his arrest.

**251.** The particular arrest of Plaintiff JAMAANE NELSON is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the Defendant POLICE OFFICERS arrested Plaintiff JAMAANE NELSON on the 30th and last day of November; hence, the Defendant POLICE OFFICERS faced an increased amount of pressure to assure that they satisfied their November quota requirements as the next day would bring a new month.

**252.** The particular arrests of Plaintiff JAMAANE NELSON is believed to have been motivated in whole or in part by a custom or practice of racism of ready victimization, not of hate, whereby minority individuals are arrested in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

**253.** The particular arrest of the Plaintiff JAMAANE NELSON is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are arrested in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals, because the Defendant POLICE OFFICERS arrested Plaintiff JAMAANE NELSON after it was already established that Plaintiff JAMAANE NELSON was not carrying any weapons or illegal substances, and did not have any outstanding warrants against him.

**254.** The Defendant POLICE OFFICERS, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

**255.** As a result of the aforementioned conduct, the Defendants have violated Plaintiff JAMAANE NELSON's constitutional rights to equal protection, and thus Plaintiff JAMAANE NELSON is entitled to seek redress under 42 U.S.C. § 1983 and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

**256.** Further information relating to the above constitutionally impermissible conduct of Defendants can be found in the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**257.** As a result of the above constitutionally impermissible conduct, Plaintiff JAMAANE NELSON was caused to suffer personal injures, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to his reputation and standing within his community.

**258.**  As a result of Defendants' impermissible conduct, Plaintiff JAMAANE NELSON demands judgment against Defendants in a sum of money to be determined at trial.

---

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

---

**259.**  Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON (collectively, unless otherwise described, "Plaintiffs" henceforth) repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**260.**  All of the aforementioned acts of the Defendant CITY, and, Defendant POLICE OFFICER HOUST, Defendant POLICE OFFICER RODA, and the Defendant "John Doe ___" POLICE OFFICERS (collectively, unless otherwise described, "Defendants" henceforth) and their agents, servants and employees, were carried out under the color of state law.

**261.**  All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

**262.**  The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

**263.**  The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

**264.**  The Defendant POLICE OFFICERS, and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

**265.**  As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to their reputations and standings within their communities.

**266.**  As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF

**FALSE ARREST UNDER 42 U.S.C. § 1983**

---

**267.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**268.** As a result of the aforesaid conduct by Defendants, Plaintiffs were subjected to illegal, improper and false arrests by the Defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

**269.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages and damage to their reputations and standing within their communities.

**270.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

**THIRD CLAIM FOR RELIEF
EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983**

---

**271.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**272.** Defendants utilized excessive force in kicking down the home's front door.

**273.** Defendants utilized excessive force in kicking down the home's front door and knocking Friend's Grandfather over as a result of the same.

**274.** Defendants utilized excessive force in pepper spraying Plaintiff JAMAANE NELSON.

**275.** Defendants utilized excessive force in handcuffing Plaintiff JAMAANE NELSON after he had just been pepper sprayed.

**276.** Defendants utilized excessive force in kicking Plaintiff JAMAANE NELSON in the face.

**277.** Defendants utilized excessive force in striking Plaintiff JAMAANE NELSON with a collapsible metal baton.

**278.** Defendants utilized excessive force in forcing Plaintiff JAMAANE NELSON to suffer multiple highly-invasive strip searches.

**279.** Defendants utilized excessive force in shoving Plaintiff GRACE NELSON down the front stairs of the 47th Precinct.

**280.** Defendants utilized excessive force in handcuffing Plaintiff GRACE NELSON when she was already lying on the ground just outside of the 47th Precinct.

**281.** Defendants utilized excessive force in keeping Plaintiff GRACE NELSON

handcuffed while she was in an ambulance en route to the emergency room of Montefiore Medical Center.

**282.** Defendants utilized excessive force in keeping Plaintiff GRACE NELSON handcuffed while she was in the emergency room of Montefiore Medical Center.

**283.** At no point during the above mentioned actions did the circumstances presented to the Defendants support any of the above applications of force on Plaintiffs.

**284.** Plaintiffs were subjected to excessive force and were assaulted by the Defendants, in violation of their rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

**285.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

**286.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

---

**287.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**288.** Each individual Defendant had an affirmative duty to intervene on the Plaintiffs behalf in order to prevent the violation of their constitutional rights.

**289.** Each individual Defendant failed to intervene on Plaintiffs behalf in order to prevent the violation of their constitutional rights despite having had a realistic opportunity to do so.

**290.** Each individual Defendant failed to intervene on Plaintiffs behalf in order to prevent the violation of their constitutional rights despite having substantially contributed to the circumstances within which the Plaintiffs' rights were violated by the Defendants' affirmative conduct.

**291.** Each individual Defendant failed to intervene on Plaintiffs' behalf in order to prevent the violation of their constitutional rights despite their awareness that their rights were being violated.

**292.** As a result of the aforementioned conduct of the individual Defendants, Plaintiffs' constitutional rights were violated.

**293.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

**294.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM
## UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983

---

**295.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**296.** Plaintiffs also incorporate herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**297.** Defendants arrested and incarcerated Plaintiffs in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrests and incarcerations would jeopardize the Plaintiffs' liberty, wellbeing, safety, and constitutional rights

**298.** The acts complained of were carried out by the aforementioned Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

**299.** The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

**300.** The aforementioned customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a) wrongfully arresting individuals without probable cause due to perceived lack of respect for the police officer (i.e., "contempt of cop" arrests);

b) wrongfully arresting individuals without probable cause in attempts to justify excessive uses of force (i.e. "contempt of cop" "cover charge" arrests; condoning brutality);

c) wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e., arrest quotas).

d) wrongfully arresting persons without probable cause due to perceived lack of respect for the police officer; in order to teach a lesson in respect while also satisfying quantitative "productivity goals" (i.e., "contempt of cop" arrests used to satisfy arrest quotas).

e) wrongfully "planting" both artificial as well as actual controlled substances in the possession of innocent persons to support the arrests of such persons (i.e., "flaking" arrests).

f) wrongfully retaliating against and arresting innocent persons in order to punish them for exercising their First Amendment rights.

g) wrongfully retaliating against and arresting innocent persons for documenting police activity.

h) wrongfully retaliating against and arresting innocent persons who request information regarding recent arrests, police activity, or both alike.

**301.** The particular arrests of Plaintiffs are believed to have been motivated in whole or in part by the aforesaid custom or practice of arresting individuals in the absence of probable cause for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrest.

**302.** The particular arrests of the Plaintiffs are believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, obstruction of governmental administration, and possession of small amounts of artificial or actual "planted" controlled substances for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because they were undertaken in a manner which indicated that the Defendants who participated in Plaintiff JAMAANE NELSON's arrest falsely stated that they found thirty vials of crack-cocaine and a small amount of marijuana in the possession of Plaintiff JAMAANE NELSON.

**303.** The particular arrest of the Plaintiffs are believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, obstruction of governmental administration, and possession of small amounts of artificial or actual "planted" controlled substances for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests, because the Defendants arrested Plaintiffs' despite having observed that Plaintiffs were not carrying any weapons or illegal substances, and did not have any outstanding warrants against them.

**304.** As a result of the aforementioned conduct of Defendants, Plaintiffs' constitutional rights were violated.

**305.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages and damage to their reputations and standings within their communities.

**306.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM
## THE MUNICIPAL DEFENDANTS' PROMULGATION OF
## UNCONSTITUTIONAL ARREST QUOTAS UNDER 42 U.S.C. §1983

---

**307.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**308.** Plaintiffs also incorporate herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**309.** Upon information and belief, the arrests of Plaintiffs were motivated wholly by the Defendants' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

**310.** Upon information and belief, the arrests of Plaintiffs were motivated in part by the Defendants' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

**311.** Upon information and belief, the arrests of Plaintiffs were motivated wholly by the Defendants' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK's police department.

**312.** Upon information and belief, the arrests of Plaintiffs were motivated in part by the Defendants' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK's police department.

**313.** The particular arrests of Plaintiffs are believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

**314.** As a result of the aforementioned conduct of the Defendants, Plaintiffs' constitutional rights were violated.

**315.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

**316.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## EQUAL PROTECTION UNDER 42 U.S.C. § 1983

**317.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**318.** Plaintiffs also incorporate herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**319.** At all times described herein, Plaintiffs were possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

**320.** The Defendants arrested and incarcerated Plaintiffs in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrests and incarcerations would jeopardize Plaintiffs' liberty, well-being, safety and constitutional rights.

**321.** The acts complained of were carried out by the Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

**322.** The acts complained of were carried out by the Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

**323.** Plaintiffs were falsely accused of crimes and violations and were taken into Police custody and detained against their wills.

**324.** That the actions of the Defendants, heretofore described, constituted unlawful detention, imprisonment, assault, and battery and were designed to and did cause mental harm, pain, and suffering both in violation of Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free, free expressive association as guaranteed by the Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**325.** As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs suffered, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputation and standing within their community.

**326.** As a result of Defendants' impermissible conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
## RETALIATON FOR FIRST AMENDMENT
## PROTECTED EXPRESSION UNDER 42 U.S.C. § 1983

327. Plaintiff GRACE NELSON repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

328. At or around the time that Plaintiff GRACE NELSON came into contact with Defendants, she engaged in protected speech or conduct, including but not limited to asking Defendants for information regarding Plaintiff JAMAANE NELSON's arrest and protesting the manner in which she was being treated by Defendants.

329. Defendants took adverse action against Plaintiff GRACE NELSON in order to punish her for engaging in protected speech and conduct.

330. Defendants took adverse actions against Plaintiff GRACE NELSON by using wrongful and unjustified force upon Plaintiff.

331. Defendants took adverse action against Plaintiff GRACE NELSON by unlawfully arresting her.

332. Defendants took adverse action against Plaintiff GRACE NELSON by taking her into Police custody and detaining her against her will.

333. Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiff GRACE NELSON and the adverse actions taken by Defendants.

334. The causal connection between the protected speech and conduct engaged in by Plaintiff GRACE NELSON and the adverse actions taken against her by Defendants was demonstrated by, among other things, the fact that Defendants used excessive force against Plaintiff GRACE NELSON in the absence of justification.

335. The causal connection between the protected speech and conduct engaged in by Plaintiff GRACE NELSON and the adverse actions taken against her by Defendants was demonstrated by, among other things, the fact that Defendants did not undertake her arrest until after Plaintiff GRACE NELSON requested information regarding the arrest of Plaintiff JAMAANE NELSON and protested the manner in which she was being treated by Defendants

336. Plaintiff GRACE NELSON was taken into police custody and detained against her will.

337. The Defendants intended Disorderly Conduct charge was a pretext intended to justify Defendants' illegal arrest of Plaintiff GRACE NELSON.

**338.** The actions of the Defendants heretofore described, constituted unlawful detention, imprisonment, assault and battery and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiff GRACE NELSON'S constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for her exercise of her civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**339.** That the conduct and actions of Defendants acting under color of State law, in assaulting, detaining and imprisoning Plaintiff GRACE NELSON were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiff GRACE NELSON'S exercise of her civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**340.** Defendants deprived Plaintiff GRACE NELSON of her liberty in violation of both her civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for her exercise of her civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**341.** Defendants' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

**342.** Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff GRACE NELSON.

**343.** Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff GRACE NELSON's constitutional rights.

**344.** All of the foregoing acts by Defendants deprived Plaintiff GRACE NELSON of federally protected rights, including, but not limited to, the right:

        A. Not to be deprived of liberty without due process of law;

        B. To be free from seizure and arrest not based upon probable cause;

        C. To free speech and expression; and

        D. To receive equal protection under the law.

**345.** As a result of the above constitutionally impermissible conduct, Plaintiff GRACE NELSON was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to her reputation and standing within her community.

**346.** As a result of Defendants' impermissible conduct, Plaintiff GRACE NELSON demands judgment against Defendants in a sum of money to be determined at trial.

## NINTH CLAIM FOR RELIEF
## STATE LAW BATTERY

**338.** Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**339.** Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**340.** Defendants who apprehended Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON committed battery upon JAMAANE NELSON and Plaintiff GRACE NELSON in the court of their apprehension by pepper spraying, kicking and repeatedly striking Plaintiff JAMAANE NELSON with a collapsible metal baton, and by shoving and unnecessarily handcuffing Plaintiff GRACE NELSON.

**341.** Defendants who apprehended Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON intentionally touched Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON with an intent to cause harm to Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON.

**342.** The circumstances presented to Defendants at that time did not support the above applications of force on either Plaintiff JAMAANE NELSON or Plaintiff GRACE NELSON.

**343.** Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON were caused to suffer personal injuries, negligent and intentional infliction of emotional distress, anguish, anxiety, fear and humiliation by Defendants' non-consensual and unprivileged physical contact.

344. As a result of the foregoing, Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON are entitled to compensatory damages and punitive damages against Defendants in amounts to be determined at trial.

### TENTH CLAIM FOR RELIEF
### STATE LAW NEGLIGENT HIRING AND RETENTION AGAINST
### DEFENDANT CITY OF NEW YORK

345. Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON repeat, reiterates, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

346. Upon information and belief, Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the Defendant POLICE OFFICERS, who conducted and participated in the arrest and acts of battery against Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON.

347. Defendant CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the aforesaid Defendant POLICE OFFICERS to engage in the wrongful conduct heretofore alleged in this Complaint.

348. As a result of the foregoing conduct, Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON were caused to suffer personal injuries, violations of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to their lives.

349. As a result of Defendants' impermissible conduct, Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON demand judgment against Defendants in a sum of money to be determined at trial.

350. As a result of Defendants' impermissible conduct, Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON demand judgment against Defendants in a sum of money to be determined at trial.

### ELEVENTH CLAIM FOR RELIEF
### STATE LAW NEGLIGENT TRAINING AND SUPERVISION

351. Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON repeat, reiterates, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

352. Upon information and belief the Defendant THE CITY OF NEW YORK failed to use reasonable care in the training and supervision of the aforesaid Defendant POLICE OFFICERS who conducted and participated in the arrest, unlawful searches, and acts of battery against Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON.

353. As a result of the foregoing conduct, Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON were caused to suffer personal injuries, violations of their civil rights,

emotional distress, anguish, anxiety, fear, humiliation, and other irreparable damage to their lives.

**354.** As a result of Defendants' impermissible conduct, Plaintiff JAMAANE NELSON and Plaintiff GRACE NELSON demand judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:      New York, New York
            October 10, 2012

Respectfully submitted,

_____~//s//~_____
SAMUEL B. COHEN [SC 0622]
STECKLOW COHEN & THOMPSON
10 SPRING STREET – SUITE 1
New York, New York 10012
[212] 566-8000
[212] 202-4952/FAX
SAM@WYLIELAW.COM
ATTORNEYS FOR PLAINTIFFS